701 P.2d 671

**STATE of Idaho, Plaintiff-Appellant,**

v.

**John ZAPP, Defendant-Respondent.**

No. 15333.

Court of Appeals of Idaho.

June 4, 1985.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., P. Mark Thompson, Deputy Atty. Gen., Boise, for plaintiff-appellant.

Larry D. Scott, Lynn, Scott & Hackney, Boise, for defendant-respondent.

BURNETT, Judge.

In this case we examine the constitutional limits of police authority to detain citizens and to search their belongings without warrants and without probable cause. The case comes to us on appeal by the state from an order suppressing evidence found in a warrantless search. We affirm the order.

John Zapp unexpectedly encountered the Boise police when he called at a friend's house one night. The friend, Zapp soon learned, had been arrested earlier that evening when a probation officer's home visit resulted in discovery of marijuana. When Zapp arrived, police officers were still in the house preparing an affidavit for a warrant to search the premises for additional controlled substances. An officer answered the knock at the door. Thence entered Zapp, carrying a can of beer in one hand and a paper sack in the other.

The police officers began to question him. When asked for identification, Zapp stated he had none. When asked his name and address, he gave fictitious information. The officers, finding the street address unfamiliar, pressed him with further questions about where he lived. Zapp became increasingly nervous and was unable to respond. One of the officers approached Zapp and directed the beam of a flashlight toward a coat pocket where the outline of a wallet was visible. When again asked for identification, Zapp put the beer can in the hand holding the paper sack, reached into his pocket with the free hand and removed the wallet. He then revealed his true name. The police made a telephone call to determine whether there were any outstanding warrants on Mr. Zapp. There were none.

But that was not the end of the encounter. An officer asked what was in the sack. "Oh, nothing of interest," Zapp replied. The officer retorted, "Well, that sparks my interest." Zapp shrugged his shoulders, looked down and hesitantly held out the sack. The officer looked inside and observed what appeared to be marijuana in plastic bags. He removed one of the plastic bags, smelled the substance, impounded it and arrested Zapp. In response to more questions on how he had travelled to the house, Zapp said that he had driven a car. A warrant was obtained to search the automobile and it yielded more marijuana.

Zapp ultimately was charged with possession of a controlled substance with intent to deliver. However, upon Zapp's motion, the district judge ordered suppression of all marijuana seized. The judge found that the search of the paper sack had not been consensual. He further ruled that the search did not come within any exceptions to the warrant requirement. Finally, he held that the marijuana in the car was tainted by the illegal search and seizure of the paper sack. This appeal followed.

I

We first examine the district judge's finding that the search was not

consensual. The state bears the burden of proving that consent was fully and voluntarily given. The question is to be viewed in light of the totality of circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *State v. Huskey*, 106 Idaho 91, 675 P.2d 351 (Ct.App.1984).

■ We find no error in the district judge's determination. At the time when the sack was searched, Zapp was being detained. The atmosphere was coercive. In such circumstances mere acquiescence, such as a shrug of the shoulders or a minimal affirmative gesture, does not constitute consent under the fourth amendment. W. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS, § 9.3(a) at 9–7 (1984).

## II

■ Next we consider whether the police had authority to search the sack without Zapp's consent. We begin our analysis by quickly tracing the evolution of current case law on warrantless detentions and searches. The fourth amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ... and no warrants shall issue, but upon probable cause...." A warrantless search is deemed to be "unreasonable" per se, "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One such exception is enunciated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry* the United States Supreme Court held that a police officer may detain a person briefly, and may conduct a "frisk" search for the officer's own safety, if (a) the officer has a reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity, and (b) the officer reasonably believes that the person may be armed and dangerous.

■ In *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), the Supreme Court broadened *Terry*. The Court said it was permissible for an officer to make a "brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information...." *Adams* did not reiterate *Terry's* requirement that detention be based upon both suspicion and safety considerations. Thus, *Adams* opened the door to detention for purely investigative reasons.

Most recently, the Supreme Court considered the permissible scope of police activity when there is neither a safety concern nor a reasonable suspicion of criminal activity. In *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983), the Court stated:

[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. If there is no detention—no seizure within the meaning of the Fourth Amendment— then no constitutional rights have been infringed. [Citations omitted].

■ These cases teach us that there are three categories of encounters between citizens and the police: (1) arrest—a full-scale seizure of the person, which the fourth amendment requires to be supported by

probable cause; (2) investigative detention—a seizure of limited duration which, when supported by a reasonable suspicion of criminal activity, falls within a judicially created exception to the fourth amendment; and (3) voluntary contact—an encounter free of restraint or coercion, and therefore outside the ambit of the fourth amendment. *See generally State v. Jones,* 454 So.2d 774 (Fla.Dist.Ct.App.1984).

Zapp's fortuitous appearance at his friend's house, while the police were there to greet him, was a "circumstance neutral of itself." *United States v. Foster,* 584 F.2d 997, 1001 (D.C.Cir.1978), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 620, 58 L.Ed.2d 682 (1978). It gave rise to no suspicion and it was the product of no coercion. Although it did not occur in a public place, the encounter otherwise had the voluntary characteristics mentioned in *Florida v. Royer, supra.* It was permissible in those circumstances for the police officers to ask Zapp who he was and where he lived. When Zapp's responses lacked the ring of truth, the officers' suspicions reasonably were aroused. They were entitled, at that point briefly to detain him, preserving the status quo while they determined his true identity and ascertained whether any warrants were outstanding.

During this period nothing occurred to cause reasonable suspicion to ripen into probable cause. The police had no basis to arrest Zapp or to search the sack under any exception to the warrant requirement which requires probable cause. The question, then, is whether the police were authorized, as an incident of the investigative detention, to search the sack. Although, as we have noted, the *Adams* decision discontinued the *Terry* requirement that an officer harbor a reasonable apprehension of danger in order to justify investigative *detention, Adams* did not eliminate that requirement for any *search* conducted incident to the detention. Indeed, the Idaho appellate courts consistently have held that the purpose of the limited search authorized during an investigative detention is to assure the officer's safety. A more intrusive search for evidence of criminal activity requires probable cause.

*E.g., State v. Cowen,* 104 Idaho 649, 662 P.2d 230 (1983); *State v. Post,* 98 Idaho 834, 573 P.2d 153 (1978), *overruled on other grounds, State v. Bottelson,* 102 Idaho 90, 625 P.2d 1093 (1981); *State v. Cook,* 106 Idaho 209, 221, 677 P.2d 522, 534 (Ct. App.1984) (opinions expressing views of Walters, C.J., and Burnett, J.). Here, the record plainly discloses that the paper sack was not searched as part of any "frisk" for the officers' safety. We conclude that the search was not authorized as an incident of investigative detention.

### III

Finally, the state argues that even if the marijuana in the sack was improperly seized, the marijuana later found in the car should not be suppressed. We believe the district judge properly viewed the marijuana in the car as a product of the illegal search of the paper sack. The exclusionary remedy for an illegal search or seizure extends to its direct and indirect products. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Silverthorne Lumber Co., Inc. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

The state suggests that the exclusionary rule should not be applied because the evidence inevitably would have been discovered. The conceptual difficulties of applying the doctrine of "inevitable discovery" to search-and-seizure cases are discussed in *State v. Cook, supra.* But in any event, the record here simply does not contain a factual predicate for applying the doctrine. We are not persuaded that seizing the marijuana in the car was in any realistic sense "inevitable" had the unlawful search earlier not occurred. We conclude that the suppression order was correctly entered.

Affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.