777 P.2d 1238

STATE of Idaho, Plaintiff–Respondent,

v.

Thane R. MUIR, Defendant–Appellant.

No. 17440.

Court of Appeals of Idaho.

Aug. 1, 1989.

Terry S. Ratliff, Mountain Home for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Thane Muir appeals from his judgment of conviction for the crime of possession of a controlled substance, heroin. I.C. § 37–2732. Muir entered a guilty plea to the charge after the district court denied a motion to suppress evidence obtained during a search of his vehicle. We vacate the judgment.

Late in the evening of January 10, 1986, three deputy sheriffs of the Elmore County Sheriff's office observed Muir and William Pierson engaged in what the officers later described as suspicious conduct. Both individuals were seen outside of a Mountain Home motel in the vicinity of the motel's vending machine. The officers initially suspected that the two were involved in illegal drug activity and for approximately the next hour carried out intermittent surveillance. The two were observed later at a gas station and then followed in Mountain Home as they drove to a second motel, a truck stop, and ultimately a third motel. At this last motel, the officers checked with the night manager and determined that the

two suspects were not currently residing at the motel. During this time one of the officers observed the two suspects near a vending machine on the premises. The officers decided to obtain identification from the two. When the officers approached, Muir and Pierson were already seated in their vehicle. Through the windows of the vehicle, the officers observed what were identified as jewelers' files lying on the vehicle's seat. The officers identified themselves and asked Muir and Pierson to exit the vehicle and provide identification. The two complied. The officers also observed, when the door of the vehicle was opened, what was suspected to be the handles of bolt cutters protruding out from under the seat. Two of the officers proceeded to question Muir and Pierson while a third officer wrote down information from their drivers' licenses.

Disputed interpretations exist for what transpired next. At some time during the questioning of Muir and Pierson, the officers indicated that both individuals would need to go to the sheriff's office for further questioning. Muir testified that at this time he said that he wanted to secure his vehicle before leaving with the officers. He asserts he then attempted to lock the vehicle but was stopped by the officers from closing the door and told to stay away from the vehicle. The officers supplied a different version. One stated that Muir and Pierson while being questioned outside the vehicle remarked that they were cold and asked to sit back in the vehicle. Another officer, the one writing down information from Muir's and Pierson's drivers licenses, instead, claimed that he looked up from his work and saw Muir suddenly inexplicably standing between the open vehicle door and the vehicle. The concern by this officer of Muir's proximity to the interior of the vehicle led him to request the other officers check the vehicle for weapons.

What followed is not disputed. A brief search of the vehicle was carried out. The officers looked around the passenger compartment and under the seats. The search confirmed the existence of the bolt cutters and yielded a small knife concealed under the driver's seat. After the search, Muir and Pierson were taken by the officers to the sheriff's office for further questioning. Neither Muir nor Pierson were allowed to reenter the vehicle after they first exited.

During the subsequent questioning Muir informed the officers of his and Pierson's involvement in the theft of proceeds from vending machines at various business locations. Muir's primary role was to supply the vehicle and act as lookout for Pierson. During questioning Muir also revealed that a small quantity of marijuana was in the vehicle. While the pair were detained, the officers questioned employees at the businesses where the vending machines were located. A number of employees confirmed change was missing from their respective vending machines. An inspection by the officers of one of the vending machines showed, by the condition of the lock, that the machine had been recently tampered with.

After gathering this information the officers obtained a search warrant for the vehicle. The affidavit for the warrant listed as items to be sought, burglarious instruments, bolt cutters, proceeds from vending machines, and a controlled substance—marijuana. The search took place at approximately 6:30 a.m. the morning of January 11. It resulted in the officers seizing the named items including a bag containing approximately $40 in change and a film canister containing marijuana.

While searching the vehicle, the officers also located a heroin "fix" kit, including hypodermic needles and other drug paraphernalia. The officers did not seize the items, rather, they chose to obtain a second search warrant specifically listing these items. The subsequent search yielded the named drug paraphernalia, as well as a small quantity of narcotics, including heroin. Muir was charged with possession of the heroin.

After the start of criminal proceedings Muir filed a motion to suppress the evi-

dence seized in the search of his vehicle. At the hearing on the motion, Muir asserted that the initial search of his vehicle for weapons was illegal. He contended that the first search was a mere pretext to obtain sufficient evidence which could be used to establish probable cause for the subsequent warrant. The district court denied Muir's motion. Muir appealed. After this first appeal was dismissed, Muir entered a conditional plea of guilty, judgment of conviction was entered and Muir was sentenced. Muir then filed a second appeal, this time from the order denying his motion to suppress and from his judgment of conviction.

We turn to the question of whether the district court erred in denying the motion to suppress. We begin by considering whether the officers had authority to search Muir's vehicle for weapons. A warrantless search is, according to the protection guaranteed under the Fourth Amendment, "deemed to be 'unreasonable,' per se, 'subject only to a few specifically established and well-delineated exceptions.'" *State v. Zapp*, 108 Idaho 723, 726, 701 P.2d 671, 674 (Ct.App.1985) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). Among these exceptions is the "stop and frisk" allowed under the rule of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry* held that brief detention by an officer of a suspect, with a frisk of the individual for the purpose of the officer's safety, was permissible if "(a) the officer has a reasonable, articulate suspicion that the person has been, is, or is about to be engaged in criminal activity, and (b) the officer reasonably believes the person may be armed and dangerous." *State v. Zapp, supra*, 108 Idaho at 726, 701 P.2d at 673.

The scope of a permissible frisk was extended under the Supreme Court case of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), to include a "frisk" of vehicles when officers possess a reasonable suspicion that a suspect stopped in a vehicle is armed and dangerous. The

officers could then conduct a protective search of the vehicle's passenger compartment, as well as the pat down frisk of the suspect. Rationales for this expansion include the inherent danger with an investigative detention of a suspect in a vehicle and the previous extension of the scope of protective searches under *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), to areas within the immediate control of the suspect. The Court determined that when the officers had a reasonable belief that a suspect posed a danger and may gain immediate control of a weapon found inside the vehicle, the balance between the invasion of cherished personal security and the protection of the officers justified the protective search.

■ Turning to the facts of this case, we note first in our evaluation of the propriety of the stop and frisk that the initial action of the officers in stopping Muir was justified. The prior surveillance and investigation of Muir provided the officers with a reasonable suspicion that he was engaged in some form of criminal activity.

■ Our primary concern is whether the subsequent search of the vehicle for weapons was reasonable. Under the guidelines of *Terry* and *Long*, a "frisk for weapons" would be permissible if the officers had a reasonable belief that Muir and Pierson posed a danger and that they may have gained immediate control of weapons in the vehicle. In our analysis of the frisk, we look to the facts known to the officers on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *United States v. Tharpe*, 536 F.2d 1098 (5th Cir. 1976). As described in the companion case to *Terry, Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), an officer carrying out a self-protective search "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Id.* at 64, 88 S.Ct. at 1903.

■ While the determination for grounds for a frisk are judged against an

objective standard of reasonableness, the test for validity of a search also entails a subjective element. The actions of the officers in carrying out a frisk cannot be validated "where, although the circumstances might pass an objective test, the officers in the field were not *actually* concerned for their safety." *United States v. Lott*, 870 F.2d 778, 783–84 (1st Cir.1989). This conclusion arises because "[a]n officer cannot have a *reasonable* suspicion that a person is armed and dangerous when he in fact has *no* such suspicion." *Id.* at 784. (Emphasis original.)

■ From the record available here, we determine that the search for weapons or "frisk" of the vehicle was not an allowable *Long* search. The action of the officers was not reasonable in light of the circumstances of the stop. The facts known to the officers up to the time the vehicle was searched give no reasonable indication that Muir or Pierson was armed and dangerous. The facts do show: (1) loitering of the suspects late at night outside several business premises; (2) a pattern of driving to various business with frequent stops; (3) the presence of suspected burglar tools in the vehicle; (4) an inability by the suspects to provide an explanation for their behavior; (5) an expressed desire by the suspects to re-enter the vehicle while questioning was underway; and (6) movements by Muir towards the vehicle. These facts present a showing that Muir and Pierson were involved in suspicious activity warranting their brief detention but the facts do not establish that the officers suspected that Muir or Pierson posed a danger and that weapons were present in the vehicle.

In addition, the evidence fails to establish, save for the testimony of the officer directing the search, that the officers present at the search expressed any immediate concern for their own safety. The record is not conclusive but no indication is given that either Muir or Pierson were frisked after exiting the vehicle or at any time prior to being taken to the police station. If the officers had a concern for their safety at the time Muir and Pierson were detained, such a frisk would have been undertaken. We note that while the officer directing the search of the vehicle stated that he was concerned when Muir moved toward the vehicle, Muir and Pierson were never allowed to re-enter the vehicle. The officers in effect removed any potential danger posed by the suspects. We are cognizant of the dangers presented to an officer at a vehicle stop. Of course, an officer does not have to needlessly expose himself to a risk of injury before executing a self-protecting search. However, the officer at the scene must be able to articulate facts which form a reasonable basis for the self-protecting search. From the facts here we conclude that the officers did not have a reasonable suspicion which justified the search.

■ The state contends any illegality of the search of Muir's vehicle does not render the warrant subsequently issued invalid. "Once the defendant has shown that a search or seizure was illegal, the question to be resolved is whether the evidence seized was 'come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *State v. Hoak*, 107 Idaho 742, 749, 692 P.2d 1174, 1181 (1984) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (citation omitted)). The state argues that the search of the vehicle yielded no information used by the officers in their application for the first search warrant and their ultimate seizure, under the second warrant, of the heroin.

We disagree with the state that the subsequent warrants are not sufficiently linked with the illegal search. The initial search of Muir's vehicle clearly provided information which was used by the officers in their application and tainted the warrant issued. The application for the warrant specifically mentions items observed by the officers during the "weapons check" including the bolt cutters located under the passenger seat. The testimony of the offi-

cers who approached Muir's vehicle established that one of the officers partially observed but did not identify these bolt cutters until the search for weapons was undertaken. We cannot conclude that this item, although only one of those mentioned in the application, did not constitute a factor in the judge's determination of probable cause to issue the warrant. Moreover, as the officers admitted, it was after the "weapons check" and the discovery of the bolt cutters, they made the decision to take the two suspects to the sheriff's office for further interrogation. The detention lasted through the night while the officers pursued their investigation. We believe the facts show a sufficient connection between the illegal search and the later discovery and seizure of the evidence. Accordingly, we hold that the district court erred in denying Muir's motion to suppress the evidence seized from his vehicle.

The order of the district court denying Muir's motion to suppress is reversed. In turn, the judgment of conviction is vacated and the case is remanded.

WALTERS, C.J., and HART, J., pro tem, concur.