**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45096**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: July 3, 2018 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| ASHLEY LYNNE SANQUIST, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Order denying motion to suppress, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Ashley Lynne Sanquist appeals from the district court's judgment entered upon Sanquist's conditional guilty plea to possession of methamphetamine, concealing evidence, and petit theft by possession of stolen property. Specifically, Sanquist challenges the denial of her motion to suppress.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officers responded to a report from employees working at a bail bond company of a suspicious vehicle with two occupants in the parking lot. Two women were in the car, one in the passenger seat and the other in the back seat. The officers approached and spoke with the occupants, who told the officers that they had arrived with the owner of the vehicle but that he had just been taken into custody inside the bail bond office. One of the occupants identified herself as Ashley Sanquist. Both women provided false and conflicting names for the other

1

occupant. Sanquist identified the other occupant as "Jacqueline Bruss." The other occupant identified herself as "Jacqueline Bulgar." She struggled to remember her birthday at which point the officer stated, "if you're lying to me that's a charge." The police database returned profiles for Sanquist and a Jacqueline Bulgar. However, the officer noted at that time the picture did not look like the occupant who identified herself as Bulgar. She reasoned to the officer that she had lost weight since the booking photo was taken. When the officer questioned her on why her tattoos did not match those labeled on the database she said she did not know. No profile returned for the name Jacqueline Bruss. Both women stated they did not have any form of identification on them. One of the officers requested to search Sanquist's purse, and she denied consent.[1] When asked for a reason for the request, the officer stated he didn't believe she was truthful about their identities.

Both women claimed they were waiting for someone to pick them up and had permission from "Tiffany" inside the bail bond office to stay in the vehicle. The officer then went into the bail bond office. When he entered, the office employee indicated Tiffany was the "defendant's cosigner who revoked him," referring to the man who had driven the girls and was arrested. He then questioned Tiffany who explained the man was her ex-boyfriend. She indicated she had previously bailed him out and since that time he had been "running around on the methamphetamines hanging out with the two girls." When asked about the ownership of the car, she indicated she had purchased the car and put her ex-boyfriend's name on the title. She gave the officers "full permission" to search the vehicle.

The occupants of the vehicle waited on a bench during the subsequent search of the vehicle. The officer discovered suspected contraband, drug paraphernalia, and stolen property. The officers also discovered identification which revealed the other occupant's true identity was Jennifer Arnold and there was an outstanding warrant for her arrest. While Sanquist was sitting on the bench, one of the officers noticed she dropped something and then hid it under her foot. When asked to stand up, the officers recovered a baggie containing a substance that tested positive for methamphetamine.

---

[1] The purse was searched during the subsequent automobile search; however, no evidence from the purse was relevant and the State did not seek to produce any evidence from the purse at trial.

The State charged Sanquist with possession of methamphetamine, Idaho Code § 37-2732(c)(1), concealment of evidence, I.C. § 18-2603, and petit theft by possession of stolen property, I.C. § 18-2403(4). Sanquist filed a motion to suppress all evidence found and the statements she made during the investigative detention. The district court denied the motion. Sanquist entered a conditional guilty plea, reserving the right to appeal the court's denial of her motion to suppress. In exchange for her guilty plea, the State agreed to reduce the concealment of evidence charge to a misdemeanor. Sanquist timely appeals.

## II.

## ANALYSIS

Sanquist requests this Court reverse the order denying her motion to suppress and vacate her conviction. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no

3

longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931.

It is the State's position that the investigative detention was permissible because Sanquist's attempt to mislead officers about Arnold's identity created reasonable suspicion that she was engaging or attempting to engage in criminal activity, specifically I.C. §§ 18-705 and 18-5413. Idaho Code § 18-705 provides it is illegal to "delay[] or obstruct[] any public officer, in the discharge, or attempt to discharge, of any duty of his office." Idaho Code § 18-5413(2) provides it is illegal to "knowingly give[] or cause[] to be given false information regarding his or another's identity to any law enforcement officer investigating the commission of an offense."

Sanquist contends the officers unlawfully extended the detention after the police database turned up profiles for Sanquist and a Jacqueline Bulgar, requiring the suppression of all evidence found and the statements she made during the investigative detention. Sanquist relies heavily on *State v. Zapp*, 108 Idaho 723, 701 P.2d 671 (Ct. App. 1985) to support her contention that law enforcement unlawfully extended the investigative detention. In *Zapp*, this Court affirmed the district court's suppression order. *Id.* at 725, 701 P.2d at 673. Zapp arrived at a friend's house at night while police officers were still in the house arresting his friend for possession of marijuana. *Id.* An officer answered Zapp's knock at the door, and Zapp entered the home carrying a can of beer in one hand and a paper sack in the other. The police officers asked for identification and Zapp responded he had none and Zapp gave fictitious information when asked for his name and address. The officers pressed him with further questions about where he lived and he became increasingly nervous and unable to respond. *Id.* An officer directed his flashlight toward Zapp's coat pocket where the outline of a wallet was visible, and Zapp removed his wallet when asked once more for identification and revealed his true name. *Id.* The officer determined there were

4

no outstanding warrants for Zapp. Thereafter, the officer asked what was in the sack Zapp was carrying, to which he replied, "Oh, nothing of interest," and the officer countered, "Well, that sparks my interest." *Id*. Zapp hesitantly held out the sack and the officer arrested him after finding plastic bags of marijuana in the sack. *Id*. A warrant was obtained to search Zapp's car that he had driven and more marijuana was discovered. He was charged with possession of a controlled substance with intent to deliver. *Id*. This Court affirmed the district court's suppression order based on its finding that Zapp did not consent to the search of the sack, the search was not authorized as incident to an investigative detention, and the search of the car was tainted by the illegal search and seizure of the sack. *Id*. at 723, 701 P.2d at 671.

In coming to the conclusion that the police had unlawfully extended the investigative detention, this Court reasoned:

> It was permissible in those circumstances for the police officers to ask Zapp who he was and where he lived. When Zapp's responses lacked the ring of truth, the officers' suspicions reasonably were aroused. They were entitled, at that point briefly to detain him, preserving the status quo while they determined his true identity and ascertained whether any warrants were outstanding.
> During this period nothing occurred to cause reasonable suspicion to ripen into probable cause. The police had no basis to arrest Zapp or to search the sack under any exception to the warrant requirement which requires probable cause.

*Id*. at 727, 701 P.2d at 675. This Court emphasized Zapp provided proper identification and police were able to verify he did not have any outstanding warrants for his arrest, "[b]ut that was not the end of the encounter." *Id*. at 725, 701 P.2d at 673. In that case, once he provided proper identification the police had no basis to either arrest Zapp or conduct a search of the paper sack, because nothing had occurred to give rise to an exception to the warrant requirement. *Id*.

Sanquist contends the investigatory detention was unlawfully extended because the only information the officers knew after the women stated their identities was that the police database corroborated the information they had provided, albeit untruthful. Sanquist asserts that this case is similar to *Zapp*. However, this case is distinguishable from *Zapp*. While in both cases the officers' suspicions were reasonably aroused and they were entitled to conduct a brief detention, in this case the information received was not corroborated. The women provided conflicting names for Jennifer Arnold. Sanquist identified Arnold as "Jacqueline Bruss." Arnold identified herself as "Jacqueline Bulgar" and struggled to remember her birthdate. Sanquist asserts the investigative detention was unlawfully extended because the officers did not know for certain the information provided by the women was false until after Arnold was arrested and officers found

her identification. Sanquist contends that until that point, the identities provided to the officers had been corroborated by the police database. However, the police database did not corroborate the name provided by Sanquist for Arnold. The database did return a profile for the name that Arnold had provided, but the officers noted that the booking photo for Jacqueline Bulgar did not look like Jennifer Arnold. Furthermore, the officers stated that Arnold did not have the same tattoos as noted in the arrest records of Bulgar. The fact that a profile for a Jacqueline Bulgar was found on the police database did not eliminate reasonable suspicion given a comprehensive review of the facts in this case.

Similarly, Sanquist's reliance on *State v. Brandstetter*, 127 Idaho 885, 908 P.2d 578 (Ct. App. 1995) is unpersuasive. Brandstetter was questioned by an officer about the location of a safe belonging to one of his clients, which was discovered in an alley next to his law firm after he claimed the safe was never present in the law offices. *Id.* at 886, 908 P.2d at 579. This Court held that falsely responding to the question that he was not legally obligated to answer did not constitute obstructing an officer for purposes of I.C. § 18-705. *Brandstetter*, 127 Idaho at 888, 908 P.2d at 581. This Court reasoned:

> Here, we believe it is doubtful that Brandstetter can be said to have hampered police officials in the exercise of their duties by falsely responding to a question which he was not legally obligated to answer. His deliberate falsification was no more obstructive than would have been his silence. Because Brandstetter could have remained silent when questioned by the law enforcement officials, his unsworn oral misstatement cannot be said to have increased the officers' burden, on the facts presented here.

*Id.*

The same reasoning cannot be employed here. In this case, the officers were responding to a call of a suspicious vehicle with two occupants. It was reasonable for them to arrive at the bail bond company's parking lot and determine the identity of the occupants. Providing false names for one of the occupants undoubtedly delayed and obstructed the officers in their attempt to identify the occupants. It is not necessary for the officer to be certain Sanquist had provided a false name for Arnold; the investigative detention was permissible because there was reasonable suspicion that the detained person was, had been, or was about to be engaged in criminal activity, in this case a violation of I.C. § 18-705. Therefore, the evidence found and the statements Sanquist made during the investigative detention were properly admitted.

6

There was probable cause to believe that a crime had been committed in the officers' presence as to the identity of Arnold and there was cause to detain Sanquist based on the information she had provided. The officers acted within the bounds of a reasonable investigation. Sanquist has failed to demonstrate that the district court erred in determining the extension of her investigative detention was not unlawful or unreasonable under the totality of the circumstances. Accordingly, the district court did not err in denying Sanquist's motion to suppress the evidence or any statements made by Sanquist.[2]

## III.

## CONCLUSION

The district court did not err in denying Sanquist's motion to suppress. Accordingly, Sanquist's judgment of conviction is affirmed.

Judge GUTIERREZ and Judge LORELLO **CONCUR**.

---

[2] The parties dispute whether Sanquist's theory that providing a false name to the officers was legal and therefore did not justify an investigative detention has been preserved for appeal. However, even when we consider the merits of her claims, Sanquist fails to demonstrate that the district court erred in determining the extension of her investigative detention was not unlawful or unreasonable under the circumstances. Therefore, we need not address the preservation issue.