803 P.2d 1002

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jeffrey James SMITH, Defendant–Appellant.**

**No. 17881.**

Court of Appeals of Idaho.

July 20, 1990.

Rehearing Denied Dec. 26, 1990.

Terry S. Ratliff, Mountain Home, for defendant-appellant.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen. (argued), for plaintiff-respondent.

SWANSTROM, Justice.

Jeffrey Smith stands convicted of robbery. The two issues raised on appeal are (1) whether the state complied with the time limits established by the Interstate Agreement on Detainers, and (2) whether Smith's confession should have been suppressed on the ground that his *Miranda* rights were violated. We hold that the detainer statutes were not violated. However, we also conclude that Smith's confession should have been suppressed. We vacate the district court judgment and remand for proceedings in accordance with this opinion.

Smith was arrested in Wyoming for attempted robbery. He was given his *Miranda* rights and he requested an attorney. A public defender was appointed for him. While in police custody in Wyoming, Smith became a suspect for robberies committed in Boise, Idaho. Idaho officers, learning of Smith's arrest, traveled to Wyoming to question him. On February 6, 1988, they read Smith his *Miranda* rights and then proceeded to interrogate him without notifying his attorney. During this first interview with the Idaho officers, Smith confessed to several robberies committed in Boise. Approximately twenty-five minutes after this first interview, Smith summoned one of the Idaho police officers back to his cell and confessed to additional robberies in other Idaho cities, Twin Falls and Mountain Home.

On February 11, a complaint was filed in Elmore County, charging Smith with robbery. He was separately charged in Ada County with the Boise robberies. After pleading guilty to the charge in Wyoming, Smith waived extradition to Idaho and was brought to Boise on March 7, 1988. A district judge in Ada County suppressed the confession of the Boise robberies on the ground that the interview in Wyoming by the Idaho police violated Smith's Fifth Amendment rights. However, the judge in the Elmore County case declined to suppress the confession obtained in the second interview with one of the Idaho officers. The judge also denied a motion to dismiss which Smith had filed asserting that he had not received a trial within the time limits set by the Idaho detainer statutes. Smith entered a conditional guilty plea in the Elmore County case and then filed this appeal.

I

Smith first argues that the district court should have dismissed the information against him because the state exceeded the time limit set forth in the Interstate Agreement on Detainers. We find this argument to be without merit.

The Interstate Agreement on Detainers, codified as I.C. § 19–5001 et seq., provides a procedure for the "expeditious and orderly disposition" of charges pending against a prisoner in jurisdictions other than the one in which he is incarcerated. I.C. § 19–5001(a). The operation of the detainer statute is triggered by the lodging of a detainer against the prisoner by the state in which the prisoner is charged. Under I.C. § 19–5001(c), the prisoner may request a disposition of the charges against him and, if he makes such a request, he must be brought to trial within 180 days from delivery of the request. *Id.* However, a continuance may be granted for good cause. Under I.C. § 19–5001(d), the state may also request the return of the prisoner for disposition of the charges. If the state makes this request, the prisoner must be brought to trial within 120 days of his arrival in the receiving state. *Id.* Again, a

continuance may be granted for good cause. I.C. § 19–5001(d)(3).

Here, Smith contends the time limits of the detainer statute were violated because he was not brought to trial until approximately seven months after he was returned to the state of Idaho, which, he asserts, well exceeds both the 120 and 180 day time limits set forth in the statute. However, there is no evidence in the record showing the filing of a detainer in Wyoming by any Idaho authority. Smith admitted that he filed no request to be returned to Idaho for trial. Consequently, we believe the provisions of the detainer statute were never triggered. The statute is inapplicable to this case.

Moreover, even if a detainer had been lodged, we agree with the finding of the district court that there was good cause for any delay in bringing Smith to trial. The delay in this case was largely caused by Smith himself. He requested a number of continuances, two of which were granted by the district court. Consequently, if the detainer statute is apposite here, its terms were not violated, since there was good cause for exceeding the statute's time limits.

II

Smith next asserts that his confession to committing a burglary in Mountain Home should have been suppressed because it was obtained in violation of his Fifth Amendment right to counsel. The state counters that (a) the record does not indicate that Smith ever invoked his Fifth Amendment right to counsel, and (b) even if he did invoke this right, he later waived it by re-initiating the interrogation himself. We will first address each of the state's arguments in turn.

Preliminarily, we note our standard of review. When a constitutional issue is raised on appeal, our standard of review is bifurcated. We defer to the district court's findings of fact if supported by substantial evidence. However, we freely review the district court's application of constitutional principles to the facts found. *State v. Hiassen,* 110 Idaho 608, 716 P.2d 1380 (Ct. App.1986).

Here, the constitutional principles are well settled. If a defendant in custody invokes his Fifth Amendment right to counsel upon being read his *Miranda* rights, police must cease the interrogation until an attorney is present. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In addition, police may not re-initiate an interrogation with a defendant who has requested counsel. *Id.* at 485, 101 S.Ct. at 1885. This prohibition applies even if the interrogation is about an offense that is unrelated to the subject of the initial interrogation. *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

### A

We now turn to the state's contention that the record does not disclose Smith ever invoked his *Fifth* Amendment right to counsel before he was interrogated by Idaho officers in Wyoming. According to the state, the record only reveals the defendant was appointed counsel, not that he invoked his right to counsel under the Fifth Amendment. Thus, the state contends, his right to counsel may have attached only under the Sixth Amendment. If such were the case, the state argues, *Roberson* would not apply, and the police would not have violated the defendant's Fifth Amendment right to counsel by questioning him on an offense unrelated to the subject of interrogation (the Wyoming crime) where he requested counsel.[1] However, we believe the Fifth Amendment is at issue here.

■ At the suppression hearing in this case, about the robbery in Mountain Home,

the Idaho police officer who interrogated Smith in the Wyoming jail stated that he knew counsel had been appointed for Smith. The district court reasonably could have inferred from this testimony that Smith had requested his Wyoming counsel upon being read his *Miranda* rights, thus invoking Fifth Amendment protection. In addition it is clear from the record of the hearing that the defense attorney, the prosecutor and the district judge were all operating on the premise that the Fifth Amendment right to counsel was at issue. The defense attorney clearly premised his argument at the suppression hearing on the assumption that Smith had requested counsel during a custodial interrogation in Wyoming. The state never challenged this premise at the trial level. In addition, the district judge found in his memorandum decision that the defendant requested counsel upon being given his *Miranda* rights. Again, no challenge was raised by the state. In fact, the prosecutor stated at the hearing that he believed this case "[fell] squarely within *Roberson* and *Edwards....*", both of which are Supreme Court decisions involving the invocation of the Fifth Amendment right to counsel. Having agreed at the trial level that this case involved the Fifth Amendment, the state may not now, on appeal, for the first time argue that the Fifth Amendment is not at issue. *See, e.g., State v. Owsley,* 105 Idaho 836, 673 P.2d 436 (1983).

### B

■ We now turn to the state's second argument, which asserts that even if Smith

---

1. In *Roberson,* 486 U.S. at 685, 108 S.Ct. at 2100, the Court explained why the protections expounded in that decision might not apply in the context of the Sixth Amendment right. The Court stated:

   Following *Massiah v. United States,* 377 U.S. 201, 207, 12 L.Ed.2d 246, 84 S.Ct. 1199 [1203] (1964), we recognized ... that the continuing investigation of uncharged offenses did not violate the defendant's Sixth Amendment right to the assistance of counsel. Our recognition of that fact, however, surely lends no support to petitioner's argument that in the Fifth Amendment context, "statements about different offenses, developed at different times, by different investigators, in the course

of two wholly independent investigations, should not be treated the same." .... This argument overlooks the difference between the Sixth Amendment right to counsel and the Fifth Amendment right against self-incrimination. The former arises from the fact that the suspect has been formally charged with a particular crime and thus is facing a state apparatus that has been geared up to prosecute him. The latter is protected by the prophylaxis of having an attorney present to counteract the inherent pressures of custodial interrogation, which arise from the fact of such interrogation and exist regardless of the number of crimes under investigation or whether those crimes have resulted in formal charges.

invoked his Fifth Amendment right to counsel, his confession to the Mountain Home robbery need not be suppressed because Smith initiated this interview. We are unpersuaded.

We acknowledge that generally police may resume interrogation of a suspect who has requested an attorney, *if* the suspect himself initiates further communication about the investigation. *Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85. However, *Edwards* only deals with resumption of valid interrogations which have been stopped by a request for counsel. It does not deal with the continuing effect of a denial of the right to counsel. That question is governed by the doctrine of fruit of the poisonous tree. Under this doctrine, police may not benefit from the fruits of their illegal conduct. The fruits of that conduct must be suppressed. *See Taylor v. Alabama,* 455 U.S. 1014, 102 S.Ct. 1707, 72 L.Ed.2d 131 (1982).

 We believe the second interview with the Idaho police was irreparably tainted by the circumstances surrounding the first interrogation. The first interview by the Idaho officers clearly violated Smith's constitutional rights, since the police initiated that interrogation after the defendant had informed Wyoming police that he wanted to talk to an attorney. *See Edwards, supra.* Moreover, under *Roberson, supra,* the first interview with the Idaho police was constitutionally proscribed even though it pertained to offenses unrelated to the subject of the initial interview with the Wyoming police.

Having concluded the first interrogation by the Idaho police was unconstitutional, we are unable to say that the second interview was so attenuated from the first that it was no longer fruit of the poisonous tree. It is true that Smith initiated the second interview. However, the interviews were linked both temporally and psychologically. There was less than a half hour gap between the interviews and both interviews were about the same subject, robberies in Idaho. Also, the rapport established by the police officers during the first interview

may have influenced Smith to initiate the further communication. And, finally, the Idaho police officers would not even have been in a position to talk to Smith and obtain his confession in the second interview had the Idaho police not traveled to Wyoming and violated Smith's constitutional rights by conducting the first interrogation. We conclude the second interview was tainted by the first interrogation and the confession obtained from it should have been suppressed.

We vacate the district court judgment of conviction for robbery and remand for proceedings in accordance with this opinion.

BURNETT, J.,* and McQUADE, J. Pro Tem., concur.