132 P.3d 468

STATE of Idaho, Plaintiff–Respondent,

v.

David S. HANSON, Defendant–Appellant.

No. 31257.

Court of Appeals of Idaho.

March 22, 2006.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

LANSING, Judge.

David S. Hanson appeals the denial of his motion to suppress evidence, contending that a search for weapons in the vehicle he was driving was not supported by reasonable suspicion that he was armed and dangerous. The State contends that, regardless of the lawfulness of the search, the denial of Hanson's suppression motion should be affirmed because Hanson did not show that he had a legitimate privacy interest in the vehicle that was searched. We conclude that the search was unjustified, but we remand for the district court to determine whether Hanson possessed a privacy interest that was violated by the search.

## I.

## BACKGROUND

While Hanson was driving one evening in January 2003 in the downtown area of Coeur d'Alene, a law enforcement officer stopped him for a vehicle equipment violation. Upon the officer's inquiries, Hanson produced a valid Idaho driver's license, and a passenger in the vehicle identified himself as "Dave Anderson." The officer returned to his patrol car to run a check on Hanson's license and registration, which did not yield any information of concern. While the officer was so engaged, the passenger abruptly fled Hanson's vehicle on foot. When the officer returned to the car, Hanson, who had remained in the driver's seat, said he had thought the passenger's name was actually "Jeff." [1] Hanson had not mentioned this discrepancy at the time the passenger gave the officer a different name, but he was otherwise cooperative throughout the encounter. He provided a description of his passenger, did not behave aggressively, submitted to and successfully passed sobriety tests, and did not appear to have broken any laws other than the equipment violation for which he had been stopped.

After conducting the sobriety tests, the officer frisked Hanson for weapons and, finding nothing, indicated that he intended to do a limited search of the vehicle for weapons. Hanson said that he did not own the vehicle and that the officer did not have permission to search. Nevertheless, after a backup officer arrived, the first officer searched the passenger compartment of the car, first checking near the passenger seat from which the other individual had fled. The search revealed an unlawfully concealed weapon under the seat, and Hanson was arrested for this offense. In a subsequent search incident to the arrest, police found trace amounts of methamphetamine in a vial in Hanson's pocket and possible ingredients for making methamphetamine in the vehicle. The officer later testified that he initially searched the car out of concern for his own safety because it was dark and because Hanson's companion had been identified by two different names and fled for unknown reasons.

Hanson was charged with possession of methamphetamine, Idaho Code § 37–2732(c), misdemeanor possession of paraphernalia, I.C. § 37–2734A(1), and misdemeanor possession of a concealed weapon, I.C. § 18–3302. He filed a suppression motion, arguing that all the evidence had been discovered as a result of an unconstitutional search of the car. The motion was denied, and he thereaf-

---

1. Although Hanson said that he believed his passenger's name was "Jeff"—which was incorrect—it does not appear that he was trying to mislead the officer. Hanson and the passenger had apparently just met at a bar, where the passenger had given Hanson this name. It was later determined that both names used by the passenger were false.

ter entered a conditional guilty plea. He now appeals, contending that the district court erred in denying the suppression motion because the officer did not have reasonable articulable suspicion that Hanson was armed and dangerous so as to justify the initial vehicle search, which ultimately led to Hanson's arrest and the search incident to arrest.

## II.

## DISCUSSION

Two issues are presented by this appeal: Hanson's argument that the officer's search of the vehicle for weapons was unjustified by any reasonable suspicion that Hanson was armed and dangerous, and the State's contention that even if the search was unlawful, Hanson is entitled to no relief because he did not prove a privacy interest in the vehicle that he, admittedly, did not own. We will first address the lawfulness of the search.

### A. The Search for Weapons Was Not Justified

Traffic stops and automobile searches are subject to the Fourth Amendment prohibition of unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660, 667 (1979). A warrantless search is deemed to be "unreasonable" per se unless it falls within one of the specifically established and well-delineated exceptions to the warrant requirement. *State v. Zapp*, 108 Idaho 723, 726, 701 P.2d 671, 674 (Ct.App.1985) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967)). One such exception was established by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889, 907 (1968), where the Court held that a police officer who has justifiably detained a person for investigation of possible criminal activity may also frisk the individual for the officer's own safety if the officer reasonably believes that the person may be armed and dangerous. *See also Zapp*, 108 Idaho at 726, 701 P.2d at 674.

In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court held that a *Terry* frisk may include protective searches of automobiles for weapons. In that case, officers stopped a vehicle they had observed moving erratically and at excessive speed. The driver was dazed, unresponsive, and appeared to be under the influence of some substance. After having been removed from the car, the driver began to walk back toward his vehicle, where the officers had seen a long hunting knife on the floorboard. The officers stopped him and searched the vehicle for weapons. In upholding this search, the Supreme Court said:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

*Long*, 463 U.S. at 1049–50, 103 S.Ct. at 3480–81, 77 L.Ed.2d at 1219–20 (quoting *Terry*, 392 U.S. at 21, 27, 88 S.Ct. at 1879, 20 L.Ed.2d at 909). Such a search is justified because law enforcement officers may be vulnerable to attack when investigating and detaining suspects who could immediately access weapons inside the vehicle. As we said in *State v. Muir*, 116 Idaho 565, 567, 777 P.2d 1238, 1240 (Ct.App.1989): "[W]hen the officers had a reasonable belief that a suspect posed a danger and may gain immediate control of a weapon found inside a vehicle, the balance between the invasion of cherished personal security and the protection of the officers justified the protective search." In analyzing the legality of a frisk,

> we look to the facts known to the officers on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances.... [A]n officer carrying out a self-protective search "must be able to point to particular facts

from which he reasonably inferred that the individual was armed and dangerous."

*Id.* (citations omitted) (quoting *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 935 (1968)).

The issue here is whether the search of the vehicle driven by Hanson was justified by the facts known to the officer at that time. The officer testified that he was concerned for his safety, but the question remains whether this subjective concern was objectively reasonable in light of the facts and circumstances known to the officer at the time and the reasonable inferences he could draw from this knowledge. The record shows that the officer was aware of nine pertinent facts before he searched the vehicle for weapons: (1) it was dark; (2) they were stopped on a city street in downtown Coeur d'Alene; (3) he had stopped Hanson merely for an equipment violation, and a check of police records had not revealed any outstanding warrants or indications of other crimes; (4) during the stop, the passenger exited the vehicle and fled the scene for unknown reasons; (5) afterward, Hanson told the officer that he knew the passenger by a different name than the one the passenger had given; (6) Hanson had not mentioned this discrepancy when the passenger gave the officer his purported name; (7) otherwise Hanson was cooperative, and did not engage in any threatening or suspicious behavior; (8) Hanson passed several sobriety tests, and (9) a pat-down search of Hanson had not revealed any weapons hidden in his clothing. The officer could not have reasonably suspected that Hanson was armed and dangerous merely because it was nighttime, an equipment violation had occurred, and Hanson had not immediately revealed the discrepancy regarding his companion's name. Thus, the central issue is whether the passenger's flight from the vehicle, in combination with the other circumstances, was sufficient to suggest that Hanson was armed and dangerous.

■ When the passenger ran away and Hanson then said he thought the passenger's name was "Jeff," not "Dave Anderson," the officer had every reason to be suspicious that criminal activity was afoot. However, a police officer's suspicion that an individual is engaged in some kind of unlawful enterprise is not sufficient to justify a protective search for weapons. The officer must have reasonable suspicion that the suspect poses a danger and has access to weapons in the vehicle. *Long,* 463 U.S. at 1050 n. 14, 103 S.Ct. at 3481 n. 14, 77 L.Ed.2d at 1220 n. 14; *Muir,* 116 Idaho at 568, 777 P.2d at 1241. *Muir* illustrates this distinction. In that case, law enforcement officers were aware of circumstances suggesting the suspects were engaged in criminal activity, perhaps involving drugs or theft. They had observed the suspects loitering outside businesses and driving to motels at which they were not guests. Upon contacting the suspects, the police saw bolt cutters in the car. The suspects could not explain their behavior, and during the encounter moved as if to re-enter the vehicle. Concerned by the suspects' proximity to the interior of the car, the police checked the vehicle for weapons. We held that this search was improper because, although the facts did suggest illicit activity, they did not give reason to suspect that the individuals were armed and dangerous.

Several factors are pertinent to the analysis, such as the type of suspicious or criminal behavior for which the individual was stopped, the defendant's attitude and demeanor, information about the possible presence of a weapon, an officer's visual identification of possible weapons or related accoutrements, furtive movements by the occupants of the vehicle, and environmental conditions such as the time of day or location of the encounter in a remote or high-crime area. For example, in *State v. Butcher,* 137 Idaho 125, 44 P.3d 1180 (Ct. App.2002), the officer was justified in searching the vehicle when the occupant matched the description of a person who had just robbed a convenience store and the officer could see weapons and ammunition on the floor of the vehicle. In *State v. Gascon,* 119 Idaho 932, 812 P.2d 239 (1991), the search for weapons was permissible because as the driver approached a conspicuous police road block constructed to apprehend a bank robber who had claimed to have a bomb, officers saw him lean toward the passenger side of his vehicle and reach under

the seat. *See also United States v. Evans,* 994 F.2d 317, 321 (7th Cir.1993) (The officers could have reasonably feared for their safety, given their observation of the defendant leaning forward as if placing or retrieving something under the seat, as well as the character of the area as a high crime area.); *United States v. Maestas,* 941 F.2d 273, 277 (5th Cir.1991) (A protective search was justified when defendant was intoxicated, belligerent, a bystander interpreted that the defendant had said in Spanish that he had a gun, and the defendant leaned forward in the front seat to reach something.); *United States v. Nash,* 876 F.2d 1359, 1360–61 (7th Cir.1989) (The officer could reasonably surmise that the defendant had hidden a gun when the defendant rose up in his seat and then reached toward the floor.); *United States v. Paulino,* 850 F.2d 93, 98 (2nd Cir.1988) (When the passenger moved his torso and bent over as if placing an object on the floor, the officer had a legal basis to conduct a protective search.); *Commonwealth v. Morris,* 537 Pa. 417, 644 A.2d 721, 723 (1994) (Defendant's leaning to his right and towards the floor near the center of the car when he was stopped by the officer, as well as reaching quickly between his legs when he was ordered to place his hands on the steering wheel were acts consistent with an attempt either to conceal or reach for a weapon.); *Commonwealth v. Robbins,* 407 Mass. 147, 552 N.E.2d 77 (1990) (A search was justified when officer saw a brown-handled object wedged in the front seat, it was late at night, the driver gave an unlikely explanation of his activities.); *State v. Dilyerd,* 467 So.2d 301, 304 (Fla.1985) (A search for weapons was permissible when the car was illegally trespassing in an orange grove at night and the passenger leaned forward and appeared to do something with his hands on the floorboard of the car.).

In this case, the officer had no information that Hanson was carrying a weapon and did not see anything inside the vehicle that suggested a hidden weapon. The offense for which Hanson had been stopped was minor, and while the officer could justifiably be suspicious about the inconsistency regarding the passenger's name, Hanson was otherwise cooperative and non-threatening. While it was dark outside, a factor that can sometimes support a search in combination with other facts that suggest a particularly dangerous environment, there is no indication that this area of downtown Coeur d'Alene was especially perilous. The passenger's action—fleeing the automobile—may have implied some kind of criminal activity, but it was not indicative of attempting to conceal or reach for a weapon in the vehicle. We conclude that the officer did not have objectively reasonable, articulable suspicion that Hanson was dangerous and had access to a weapon inside the automobile. Therefore, the search of the automobile was not justified.

## B. Did Hanson Have a Reasonable Expectation of Privacy in the Vehicle?

■ The lack of justification for the vehicle search does not establish that the search violated Hanson's rights. Even if a search is improper, only an individual with a privacy interest that was invaded by the search may obtain suppression of evidence found.[2] *State v. Foldesi,* 131 Idaho 778, 780, 963 P.2d 1215, 1217 (Ct.App.1998). This is true because the Fourth Amendment protects people—not places—against governmental intrusions, *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214, 223 (1984); *Katz,* 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 587, and the exclusion of evidence gathered in violation of the Fourth Amendment is a "means for making effective the protection of priva-

---

**2.** This is sometimes referred to as the defendant's "standing" to challenge the search. The word "standing" is technically inaccurate. The United States Supreme Court has stated that standing involves only procedural rights, but whether a defendant is able to show a violation of his Fourth Amendment rights is a substantive question "more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 472, 142 L.Ed.2d 373, 379 (1998). Nevertheless, the term is often employed as useful shorthand referring to whether the defendant had a privacy interest in a place that was searched such that he or she is entitled to the exclusion of the resulting incriminating evidence. We use the term in that fashion in this opinion.

cy," *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 731 4 L.Ed.2d 697, 702 (1960), *overruled on other grounds by United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Thus, "[i]t is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the [exclusionary] rule's protections." *Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387, 395 (1978). *See also Salvucci,* 448 U.S. at 85, 100 S.Ct. at 2549, 65 L.Ed.2d at 623. Toward this end, when a search is challenged, the burden is placed on the defendant to make a threshold showing that he had a legitimate expectation of privacy in the place or thing searched. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633, 641 (1980); *State v. Peters,* 130 Idaho 960, 961–62, 950 P.2d 1299, 1300–01 (Ct.App. 1997); *State v. Holman,* 109 Idaho 382, 386, 707 P.2d 493, 497 (Ct.App.1985).

### 1. The State may challenge standing for the first time on appeal

■ The question of Hanson's standing was not expressly litigated in the court below. The State did not question Hanson's standing, and the district court made no ruling on it. Therefore, Hanson urges us to hold that the State may not now raise the issue under our usual rule that issues not raised in the trial court will not be addressed on appeal. *State v. Fodge,* 121 Idaho 192, 195, 824 P.2d 123, 126 (1992); *State v. Jones,* 141 Idaho 673, 676, 115 P.3d 764, 767 (Ct. App.2005). Idaho appellate courts have nev-

er squarely addressed this question,[3] but we now hold that on appeal the State may dispute a defendant's standing to challenge a search, even if it did not do so in the trial court.

Two United States Supreme Court cases are instructive. In *Steagald v. United States,* 451 U.S. 204, 208–209, 101 S.Ct. 1642, 1646, 68 L.Ed.2d 38, 43 (1981), the government first challenged the defendant's standing on appeal. Although the Court said that the government had lost the opportunity to make the standing argument, this was because it had forfeited the argument by its own affirmative assertions, concessions, and acquiescence in the course of the litigation. The Supreme Court did not speak of the government's failure to raise the issue below, as would be expected if the Court was relying on the usual rule that new issues will not be considered, but instead said that the government may lose the opportunity to challenge the defendant's standing, when "it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion[4] during the litigation." *Id.* at 209, 101 S.Ct. at 1646, 68 L.Ed.2d at 44.

In *Combs v. United States,* 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972), the defendant presented no evidence regarding his privacy interest in a place searched under an allegedly defective warrant. Although the State did not press this issue in the lower court, but raised it on appeal, the Supreme

---

**3.** This Court has stated that by ruling on a suppression motion a district court implicitly found that the defendant had standing to contest the search. *Peters,* 130 Idaho at 961, 950 P.2d at 1300. However, it does not appear that the question whether the State could raise the issue for the first time on appeal was directly before the court in that case.

Additionally, Hanson urges us to interpret the Idaho Supreme Court decision in *State v. Wright,* 134 Idaho 79, 996 P.2d 298 (2000), as precluding the State from challenging standing. In that case, the State argued for the first time on appeal that the defendant did not have a reasonable expectation of privacy in his wife's purse, and thus could not challenge the validity of the search. The Court did not directly address the standing argument, but presumed, without deciding, that the defendant did have standing to

challenge the search, which the Court ultimately found to be constitutional. *Id.* at 81–82, 996 P.2d at 300–01. Because the Court determined that the search was lawful and the evidence not suppressible even if the defendant had standing, there was no need for the Court to resolve the standing issue. That is not the case here, where we have determined that the search was unlawful and the evidence subject to suppression if Hanson had a reasonable expectation of privacy in the searched vehicle.

**4.** Because the Court chose not to rest its holding on the fact that the government had made its argument for the first time on appeal, the government's failure to raise the issue to the court below is apparently not what the Court had in mind when it spoke of "[failure] to raise such questions in a timely fashion."

Court did not hold that the argument was forfeited, as would have occurred if the State had been precluded from arguing about the defendant's standing for the first time on appeal. Instead, the case was remanded for further development—which could result in a finding that the defendant did not have standing. Impliedly, the State was permitted to go forward on the standing argument despite its silence about the issue below.

Consistent with these United States Supreme Court decisions, several jurisdictions have permitted the government to challenge a defendant's standing initially on appeal, so long as it has not previously taken a contrary position or otherwise affirmatively waived the claim. *See United States v. Robertson,* 833 F.2d 777, 779 (9th Cir.1987); *United States v. Hansen,* 652 F.2d 1374, 1382–83 (10th Cir.1981); *Fouse v. State,* 73 Ark.App. 134, 43 S.W.3d 158, 163 (2001); *People v. Keller,* 93 Ill.2d 432, 67 Ill.Dec. 79, 444 N.E.2d 118 (1982); *People v. Anderson,* 306 A.D.2d 536, 761 N.Y.S.2d 855 (2003); *State v. Klima,* 934 S.W.2d 109, 111 (Tex.Crim.App. 1996). *But see* the following cases holding the prosecution waived the standing issue by failing to raise it in the trial court: *United States v. Sanchez,* 689 F.2d 508, 509 n. 1 (5th Cir.1982); *Murdock v. State,* 664 P.2d 589, 595 (Alaska Ct.App.1983); *Bell v. State,* 96 Md.App. 46, 623 A.2d 690 (1993); *State v. McMurphy,* 48 Or.App. 327, 616 P.2d 1203, 1205 (1980) *aff'd in State v. McMurphy,* 291 Or. 782, 635 P.2d 372, 375 (1981); *State v. White,* 635 S.W.2d 396, 399 (Tenn.Crim.App. 1982); *State v. Grundy,* 25 Wash.App. 411, 607 P.2d 1235, 1237 (1980).

A rule allowing the State to question the defendant's privacy interest on appeal although it was not challenged below is consistent with prior holdings of the Idaho appellate courts that the State may proffer on appeal justifications for warrantless searches or seizures that were not argued to the trial court. For example, in *Deen v. State,* 131 Idaho 435, 436, 958 P.2d 592, 593 (1998), an appeal from an order suspending Deen's driver's license for refusal to take a blood alcohol test, the question presented was whether the officer had been justified in stopping Deen's car. The Idaho Supreme Court held that the traffic stop was justified by facts that would create reasonable suspicion of a violation of the inattentive driving statute, and therefore upheld the license suspension order, even though the officer did not testify and the State did not argue in the trial court that violation of that statute justified the stop. Likewise, in *State v. Bower,* 135 Idaho 554, 21 P.3d 491 (Ct.App.2001), we held that the State was not foreclosed from arguing on appeal that police officers' entry into the defendant's hotel room was lawful as an extension of paramedics' prior entry, even though that argument had not been made below. We explained:

> [I]t must be remembered that the purpose of the exclusionary rule, which disallows the use of unconstitutionally obtained evidence at the trial of an accused, is to deter law enforcement officials from violating constitutional protections. Use of the exclusionary rule imposes a price upon society in that it often enables the guilty to escape prosecution. Therefore, the exclusionary rule should be employed only when there has *in fact been a violation of the defendant's constitutional rights.*

*Id.* at 558, 21 P.3d at 495 (citations omitted).

This social cost ought not be imposed merely because a prosecutor and trial court focused only on the substantive issues relating to the search and did not consider whether the defendant had shown a privacy interest in the place searched. A defendant, perhaps knowing his interest is weak or non-existent, might choose to ignore the issue in the hope that the prosecution will overlook it. As noted above, the burden to show a privacy interest in the place searched is on the defendant; the State has no responsibility to go forward with the evidence on this issue. Indeed, a court may find *sua sponte* that the defendant has not shown standing, regardless of whether the prosecutor brought this flaw to the court's attention. *See United States v. Nadler,* 698 F.2d 995, 998 (9th Cir.1983); *United States v. Francis,* 646 F.2d 251, 254–55 (6th Cir.1981). For these reasons, we hold that the State may challenge Hanson's standing for the first time on appeal.

## 2. Hanson did not prove that he had standing

The evidence presented at the suppression hearing does not show whether Hanson had a legitimate expectation of privacy in the searched vehicle. Hanson informed an officer that he did not own the car. The only other pertinent information about Hanson's connection to the car is that he was driving it. Although lack of ownership is a significant factor, it does not, standing alone, establish the lack of a privacy interest. By the same token, Idaho courts have never held that mere status as the driver, standing alone, is sufficient to give one a reasonable expectation of privacy in a vehicle. One analogue is *State v. Munhall*, 118 Idaho 602, 605, 798 P.2d 61, 64 (Ct.App.1990), where this Court determined that a driver had not demonstrated a reasonable expectation of privacy, but that case is distinguishable because the vehicle owner was a passenger and consented to the search. The decision in *State v. Bottelson*, 102 Idaho 90, 625 P.2d 1093 (1981), is more instructive. Although the defendant was not the driver—for the car was parked and he was standing outside it—he was apparently the only person who could have been in control of the vehicle. The Idaho Supreme Court determined that the defendant's mere possession of the car was not sufficient to show that he owned or had a right to possess it, and thus he did not have standing to challenge the search. Although that case did not involve a driver, it suggests that control of the vehicle, on its own, is insufficient to give a person standing to contest a search.

Other jurisdictions have recognized a non-owner driver's legitimate expectation of privacy in a vehicle if the driver was in some way authorized to control the vehicle. As articulated by the 10th Circuit Court of Appeals:

> Where the proponent of a motion to suppress is the car's driver but not the registered owner, mere possession of the car and its keys does not suffice to establish a legitimate possessory interest. Rather, at a minimum, the proponent bears the burden of establishing "that he gained posses-

sion from the owner or someone with authority to grant possession."

*United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir.2003) (citations omitted). Such authorization has been held to include rental agreements (sometimes even after the rental agreement has expired), *United States v. Henderson*, 241 F.3d 638, 647 (9th Cir. 2000); permission from the owner to borrow the car, *United States v. Miller*, 821 F.2d 546, 548 (11th Cir.1987); permission from another person believed to have authority over the car, *Valdez Hocker*, 333 F.3d at 1209; or a history of use from which a presumption of permission can be drawn, *United States v. Williams*, 714 F.2d 777, 779 n. 1 (8th Cir.1983). In this case, Hanson may have had authorization to drive the vehicle sufficient to give him a legitimate privacy interest, but he presented no evidence of such authorization, and the mere fact that he was driving it is insufficient to confer standing.

We are thus faced with a situation where Hanson would have been entitled to suppression of evidence if he had proved a reasonable expectation of privacy in the vehicle, but his failure to present evidence addressing his privacy interest may have been due to an impression that the prosecutor tacitly conceded the issue since the prosecutor did not question Hanson's standing. Importantly, Hanson and his counsel did not have the benefit of this decision, which explicitly notifies defendants that they bear the burden to show standing even if it has not been challenged by the State, and that the State may contest standing on appeal even if it does not do so in the trial court. In this circumstance, we conclude that it is appropriate to remand to the district court to allow Hanson to present evidence on the standing question. *See Combs*, 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308; *United States v. Freitas*, 716 F.2d 1216 (9th Cir.1983).

Defendants with suppression hearings occurring after publication of this opinion are on notice, however, that they must show in every case that they have standing to challenge the search, or convince the State to so stipulate. A defendant who does not do so risks an appellate attack on his standing without further opportunity to present evidence related to his privacy interest. In the

future, if the State successfully argues for the first time on appeal that the defendant did not show standing, we will not remand to give the defendant another opportunity to present evidence. Rather, we will affirm on the basis of lack of standing even if the challenged search was not lawful, applying our well-established rule that if a lower court's disposition is correct, but made on an erroneous theory, it will be affirmed on the correct theory. *See State v. Morris,* 119 Idaho 448, 450, 807 P.2d 1286, 1288 (Ct.App. 1991); *State v. Hocker,* 119 Idaho 105, 106, 803 P.2d 1011, 1012 (Ct.App.1991) (citing *State v. Werneth,* 101 Idaho 241, 243, 611 P.2d 1026, 1028 (1980), *cert. denied,* 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 118 (1981)).

## III.

### CONCLUSION

The district court's determination that the search of the vehicle driven by Hanson com-plied with constitutional standards was erroneous, but the question of Hanson's standing to challenge the search must be resolved. Therefore, the order denying Hanson's suppression motion is vacated and the case is remanded for the district court to determine whether Hanson possessed a reasonable expectation of privacy in the vehicle such that he is entitled to suppression of fruits of the improper search.

Chief Judge PERRY and Judge GUTIERREZ concur.