**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 31789**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2007 Opinion No. 4 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: February 12, 2007 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| BOBBY ALLEN CUTLER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Darla S. Williamson, District Judge.

Judgment of conviction for trafficking in a controlled substance, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.  Justin M. Curtis argued

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.  Lori A. Fleming argued.

---

GUTIERREZ, Judge

Bobby Allen Cutler appeals from his judgments of conviction for felony trafficking in methamphetamine and misdemeanor unlawful entry, specifically challenging the denial of his motion to suppress evidence.  We affirm.

## I.

## FACTS AND PROCEDURE

After noticing a vehicle traveling at approximately 45 mph in a 25 mph zone at around 8:30 one morning, Officer Schultz of the Boise Police Department pulled over the driver.  As the officer approached, Cutler exited the vehicle and immediately shut the door.  Officer Shultz requested he get back into the vehicle, but Cutler could not open the door because it was now locked with the keys inside.  He told the officer that another set of keys was at his apartment and requested consent to retrieve them.  Denying permission, Officer Shultz told Cutler to stand next

1

to the officer's motorcycle at which point Cutler momentarily paused and then fled the scene on foot.

Officer Schultz requested backup to secure Cutler's vehicle and commenced to give chase. Having failed to apprehend Cutler, he returned to the vehicle and, along with Officer Lookhart, began to investigate its ownership. When he ran the license plate number through dispatch, Officer Shultz discovered the car was registered to Budget Rental Car (Budget). Officer Lookhart called the company and was told the car was rented to Jonas Hernandez who, when contacted by the officer, said he had loaned the car to a friend, Nick Stewart. When reached by telephone, Stewart said he had loaned the vehicle to Cutler. According to the rental agreement, which had expired four days earlier, Hernandez was the only authorized driver.

When asked whether they wanted the vehicle to be impounded or wanted to pick it up, Budget elected the latter. However, prior to Budget's representative (a tow truck) arriving on the scene, Officer Schultz used a "slim jim" to gain entrance and conducted an "inventory search" of the car. During the course of the search, Officer Schultz discovered a methamphetamine pipe in the pocket of the driver's side door and a backpack on the floor in front of the passenger seat containing baggies, a rubber glove, pipes, a substance appearing to be methamphetamine, a traffic citation, and mail bearing Cutler's name.

The substance was confirmed to be methamphetamine, and Cutler was charged with trafficking in methamphetamine, I.C. § 37-2732B(a)(4), and unlawful entry, I.C. § 18-7034.[1] He moved to suppress the evidence relating to the drug charge, arguing it was obtained in the course of an illegal search of the car. After the district court denied the motion, Cutler entered a conditional guilty plea, reserving the right to appeal the lower court's denial of his motion to suppress. This appeal followed.

## II.

## ANALYSIS

Cutler challenges the district court's denial of his motion to suppress the evidence found in the rental car he was driving, arguing it is the product of an illegal search. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial

---

[1]     The unlawful entry charge arose from an unrelated incident.

evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Initially, the district court determined Cutler did not have standing[2] to challenge the search and subsequent seizure on the grounds that he was not named as an authorized driver of the car and that he abandoned the vehicle by running from the scene. The Fourth Amendment to the United States Constitution, as well as article I, § 17 of the Idaho Constitution, prohibit unreasonable searches. However, even if a search is improper, only an individual with a privacy interest invaded by the search may obtain suppression of the evidence detected. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978); *State v. Hanson*, 142 Idaho 711, 716, 132 P.3d 468, 473 (Ct. App. 2006); *State v. Foldesi*, 131 Idaho 778, 780, 963 P.2d 1215, 1217 (Ct. App. 1998). Thus, when a search is challenged, the defendant has the burden to make a threshold showing that he has a legitimate expectation of privacy in the place or thing searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *Hanson*, 142 Idaho at 717, 132 P.3d at 474; *State v. Peters*, 130 Idaho 960, 961-62, 950 P.2d 1299, 1300-01 (Ct. App. 1997); *State v. Holman*, 109 Idaho 382, 386, 707 P.2d 493, 497 (Ct. App. 1985). In other words, a defendant seeking suppression must show he had a subjective expectation of privacy in the place or thing searched that society is willing to recognize as reasonable in light of all the circumstances. *State v. Morris*, 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct. App. 1998).

The dispositive inquiry here is whether Cutler's status as an unauthorized driver of the rental car extinguishes his standing to challenge the constitutionality of the search or whether he possessed a legitimate expectation of privacy in the vehicle regardless of that fact. The extent to

---

[2]     As we noted in *State v. Hanson*, use of the term "standing" in this context is technically inaccurate. 142 Idaho 711, 716 n.2, 132 P.3d 468, 473 n.2 (Ct. App. 2006). However, as in *Hanson*, we continue to use the term as useful shorthand in reference to whether the defendant had a privacy interest in a place that was searched such that the exclusionary rule is applicable to any incriminating evidence uncovered.

which the driver of a rental vehicle, who is neither the renter nor an authorized driver under the rental agreement, has standing to challenge a search of the vehicle is a question of first impression in Idaho. It is an issue that has resulted in at least three disparate approaches, with the differences seen most clearly in the split that has evolved between the federal circuit courts.

The first approach, espoused by the Fourth, Fifth,[3] and Tenth Circuit Courts, is a bright-line rule looking solely to the rental agreement. These circuit courts have determined that one driving or occupying a rental vehicle who is not the renter and is not authorized by the rental company to drive the vehicle, even if he or she has permission from a person who is an authorized driver, has no reasonable expectation of privacy in the vehicle and consequently lacks standing to complain of the vehicle's subjection to an allegedly unlawful search. *See e.g.*, *United States v. Jones*, 44 F.3d 860, 871 (10th Cir. 1995); *United States v. Wellons*, 32 F.3d 117, 119 (4th Cir. 1994); *United States v. Boruff,* 909 F.2d 111, 117 (5th Cir. 1990). *See also State v. Pabillore*, 133 Idaho 650, 653, 991 P.2d 375, 378 (Ct. App. 1999) (recognizing the district court's determination that the defendant did not have standing because he was not the renter or authorized driver of a rental vehicle was supported by numerous authorities). The circuit courts adopting this approach reason that because an unauthorized driver does not have a property or possessory interest in the car, the driver does not have an expectation of privacy in that car.

Taking a modified view of the bright-line approach are the Eighth and Ninth Circuit Courts which generally do not allow standing unless an unauthorized driver can show he had permission from the authorized driver to use the vehicle. *See e.g., United States v. Thomas*, 447 F.3d 1191, 1199 (9th Cir. 2006); *United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998); *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995). As the Ninth Circuit Court recognized in *Thomas*, this approach essentially equates an unauthorized driver of a rental car with the non-owner driver of a privately owned car. *Thomas*, 447 F.3d at 1197 (comparing the rental scenario to *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir. 1980), which held that

---

[3] The Fifth Circuit has an outlier case, *United States v. Kye Soo Lee*, 898 F.2d 1034 (5th Cir. 1990), which concluded that an unauthorized driver may have standing to challenge the search of a rental vehicle if the driver had the renter's permission. However, more recent Fifth Circuit cases have followed the bright-line approach and distanced themselves from *Kye Soo Lee* as "not controlling . . . because it neither reflects nor addresses the terms of the . . . rental agreement." *United States v. Thomas*, 447 F.3d 1191, 1196 n.8 (9th Cir. 2006) (quoting *United States v. Seeley*, 331 F.3d 471, 472 n.1 (5th Cir. 2003)).

4

a non-owner has standing to challenge a search where he has "permission to use his friend's automobile and the keys to the ignition and the trunk, with which he could exclude all others, save his friend, the owner").

Finally, the Sixth Circuit Court rejected a bright-line approach in favor of a totality of the circumstances inquiry. *United States v. Smith*, 263 F.3d 571, 586 (6th Cir. 2001). While the court recognized a presumption that unauthorized drivers do not have standing to challenge a search, it determined that a "rigid test is inappropriate, given that we must determine whether [a defendant] had a legitimate expectation of privacy which was reasonable in light of all the surrounding circumstances." *Id*. (citing *Rakas*, 439 U.S. at 152 (Powell, J., concurring)). In lieu of sole reference to the rental agreement, the court considered several factors, including: (1) whether the defendant had a driver's license; (2) the relationship between the unauthorized driver and the lessee; (3) the driver's ability to present rental documents; (4) whether the driver had the lessee's permission to use the car; and (5) the driver's relationship with the rental company.

Given the increasingly common utilization of rental vehicles for a myriad of purposes and our view that a bright line rule fails to address the ensuing complexities, we are convinced the Sixth Circuit Court's totality of the circumstances approach best addresses the issue.[4] In *Smith*, the Court confronted a scenario where an officer had pulled over a rental vehicle driven by Smith. The only authorized driver listed on the rental agreement, which Smith provided to the officer, was Smith's wife who was not present. After a subsequent search uncovered drugs, the government contested Smith's standing to challenge the legitimacy of the search given his status as an unauthorized driver. The Sixth Circuit Court began its analysis by acknowledging that as a general rule, an unauthorized driver of a rental vehicle does not have a legitimate expectation of privacy in a vehicle. However, the Court declined to be constrained by an absolute maxim and instead proceeded with a totality of the circumstances inquiry to determine whether the circumstances surrounding Smith's occupation of the vehicle warranted finding, in essence, an exception.

---

[4] Thus, we must reject the state's argument that a person not listed on a lease agreement automatically lacks standing. *See Rakas*, 439 U.S. at 145 (stating that "arcane distinctions

Even though Smith was not listed as an authorized driver on the rental agreement, the Court eventually concluded that he did have standing. *Smith*, 263 F.3d at 587. Several factors were considered important. First, the Court noted that Smith was a licensed driver and it was therefore not illegal for him to be driving in the first place. Second, it was deemed significant that Smith was able to produce the rental agreement and to provide the officer with other relevant information regarding the vehicle. Also, Smith had been given permission to drive the vehicle by someone with whom he had an intimate relationship, his wife, and who was listed on the agreement as an authorized driver, as opposed to coming into possession by way of an "unrelated third party" about which the driver could provide little or no information. Finally, and most significantly, the record showed that Smith himself had a business relationship with the rental company. He had been the one to call and reserve the vehicle, had given the company his credit card number, and was provided with the reservation number his wife utilized when she picked up the vehicle. Thus, the Court concluded, this was not a case where an unauthorized driver was simply granted permission by a third party renter since Smith himself was a *de facto* renter of the vehicle. Based on Smith's relationship with the authorized driver and the rental car company, and that he had personally paid for the vehicle, the Court held that he had a legitimate expectation of privacy in the car. *Id*. at 586-87.

In contrast, the instant case presents considerably more attenuated relationships among Cutler, the authorized driver, and the rental company, such that there are insufficient facts to overcome the general presumption that unauthorized drivers lack standing. There was no evidence presented regarding the relationship between Cutler and Hernandez, the only authorized driver--including whether they even knew each other. Accordingly, there was no evidence that Cutler even had permission from the only authorized driver to operate the vehicle. And while Hernandez had given Stewart permission to use the car, there was no indication regarding the scope of that permission--most importantly, there was not evidence as to whether Hernandez's permission to Stewart encompassed consent for Stewart himself to lend the vehicle. In addition to not having a relationship with the authorized renter of the car, Cutler also did not have a relationship with Budget (quite unlike the Smith's *de facto* renter status). Furthermore, not only

_____

developed in property and tort law . . .ought not . . . control" the reasonableness of an expectation

was Cutler's name absent from the rental agreement, but the agreement had expired, making even Hernandez's possession of the car in contravention of the contract.[5] It is the totality of these factors that preclude us from deviating, in this case, from the general rule that unauthorized drivers of rental vehicles do not enjoy a legitimate expectation of privacy in such vehicles. Thus, Cutler may not challenge the subsequent search of the vehicle.

Given our holding that Cutler did not have a reasonable expectation of privacy, it is unnecessary for us to consider his other arguments regarding abandonment and inventory search issues as found by the trial court. Accordingly, we uphold the district court's order denying suppression and affirm Cutler's judgment of conviction for trafficking in methamphetamine.

Judge Pro Tem SCHWARTZMAN **CONCURS**.

Judge LANSING, **CONCURRING**

I join in the foregoing opinion, but I write separately to express my view that in the vast majority of cases, the question whether the driver of a rental car had direct permission to use the car from the lessee or from a contractually authorized driver will be dispositive of the standing question. The existence of such permission should ordinarily be sufficient to confer a privacy interest upon the driver if and to the same extent that the lessee possesses such a privacy interest. Only in extraordinary circumstances would I hold that a driver who did not obtain permission from the lessee or other authorized driver could have a legitimate expectation of privacy in the vehicle. My initial impulse in this case was to adopt the position taken by the Eighth and Ninth Circuits which, as explained in this Court's opinion above, hold that the permission factor is entirely dispositive. Nevertheless, I join in this Court's opinion adopting a totality of the circumstances approach to avoid excluding the possible, rare circumstance where a legitimate privacy interest may arise even in the absence of direct permission from the lessee or other authorized driver. In that circumstance, however, the driver will bear a heavy burden to demonstrate the existence of other factors that would give him or her a reasonable expectation of privacy in the vehicle.

---

of privacy) (citing *Jones v. United States*, 362 U.S. 257, 266 (1960)).

[5] In regards to two other factors considered by the *Smith* court, whether the driver was able to produce a driver's license and rental documents, Cutler's flight from the scene after having locked the car doors precluded the officer from reaching this area of investigation.