## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 46615

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: December 21, 2020** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| KAITLYNN JANE TURNER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Benewah County. Hon. Scott L. Wayman, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

LORELLO, Judge

Kaitlynn Jane Turner appeals from her judgment of conviction for possession of a controlled substance. We affirm.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Night-shift officers observed illuminated interior lights and vehicles parked at a residence that had been reported vacant. Aware that the residence was linked to drug activity and that the owner had preauthorized officers to enter the residence to investigate possible criminal conduct, two officers knocked on front door. Receiving no response from anyone inside, the officers entered the residence through an unlocked side door. Upon entry, the officers smelled fresh cigarette smoke and observed drug paraphernalia in plain view. During a protective sweep of the

1

residence, the officers encountered Turner, who was hiding in a bedroom between the box spring and mattress of a bed, and two other individuals hiding in a bathroom. The three suspects were detained, handcuffed, brought into the living room, and given *Miranda*[1] warnings. While one officer attempted to contact the owner of the residence, the other searched the bathroom. The officer found methamphetamine, returned to the living room, confronted the two individuals found in the bathroom with the drugs, and then asked all three suspects whether other controlled substances would be found in the residence. None of the three suspects admitted possessing any controlled substances. During this exchange, a fourth individual arrived at the residence and was immediately detained.

In response to questions about her presence in the residence, Turner asserted that she was a tenant. Eventually officers were able to contact the residence's owner and confirmed that Turner had permission only to enter the residence and check on it. Because Turner had apparent permission to enter the residence and was not connected with the methamphetamine found in the bathroom, officers released Turner from her handcuffs. Turner then whispered to one of the officers that she would like to speak with him privately, apparently hoping to inform the officer of drug offenses by the other suspects. The officer followed Turner into the bedroom where she had been hiding and asked her whether the fourth individual who had just arrived was in possession of any controlled substances. In response to other questions from the officer, Turner admitted there were syringes in the bedroom that she had used to inject methamphetamine and displayed the contents of a bag removed from a nearby drawer to the officer. The officer immediately noticed that one of the syringes in the bag was still loaded with what appeared to be methamphetamine. Officers arrested Turner shortly thereafter.

The State charged Turner with possession of a controlled substance for the drugs found in the bedroom. Turner filed a motion to suppress, arguing that the drugs she was charged with possessing were the fruits of an unlawful search. The district court denied Turner's motion, concluding that she lacked standing to challenge any search of the residence and that, even if she had standing, she voluntarily disclosed the presence of the drugs in the bedroom to officers. Subsequently, Turner entered a conditional guilty plea to possession of a controlled substance,

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

I.C. § 37-2732(c)(1), retaining her right to appeal the denial of her motion to suppress. In exchange for her guilty plea, the State agreed to recommend a suspended sentence and probation. Turner appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Turner argues that the district court erred in denying her motion to suppress. Specifically, Turner contends that the district court erred by concluding that she lacked Fourth Amendment standing because the prosecutor conceded that Turner had standing and that the controlled substances found in the bedroom, along with her statements about that evidence, were fruits of an unlawful search of the bathroom. Alternatively, Turner argues that the case should be remanded to allow the district court to address whether the allegedly unlawful search of the bathroom affected the voluntariness of her disclosure of the controlled substances in the bedroom. The State responds that the district court was not bound to accept a concession regarding Turner's standing and properly concluded that she lacked a reasonable expectation of privacy in the residence. Additionally, the State contends that, even if Turner had standing, the district court correctly found that she voluntarily disclosed the controlled substances in the bedroom to officers. We hold that Turner has failed to show error in the denial of her motion to suppress.

**A.     Standing**

Turner argues at length that the district court erred by concluding that she lacked standing to challenge a search of the residence.  According to Turner, the State conceded during the suppression hearing that she had standing and, regardless of the alleged concession, she held a reasonable expectation of privacy in the residence because she was living there.  We hold that Turner has failed to preserve both arguments and that, even if she had preserved the second argument, her claim to a reasonable expectation of privacy in the residence is meritless.

**1.     Concession**

An appellate court will not consider issues raised for the first time on appeal.  *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017).  Proper preservation of an issue for appellate review requires presentation of both the issue and the party's position on that issue in the trial court.  *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019).  Even when a party generally preserves an issue, appellate review is limited to the evidence, theories, and arguments presented below.  *Garcia-Rodriguez*, 162 Idaho at 275, 396 P.3d at 704.

Turner argues that the State conceded that she had standing and, therefore, the district court erred in considering the issue at all.  The State's purported concession occurred during the suppression hearing after the district court had already heard testimony from Turner intended to establish her standing to challenge a search of the residence; testimony the district court ultimately found not to be credible.[2]  After the purported concession, Turner did not respond by arguing that her standing to challenge a search of the residence was no longer a live issue.  Even

---

[2]     Turner contends that the State conceded her standing in the following exchange:

> [DEFENSE]:  So, your Honor, I believe we've established standing.  It's a warrantless search.  I believe the burden shifts to the State at this time.
> [STATE]:     Court [sic] is satisfied with the standing, your Honor.

It is unclear whether the appearance of the word "court" in the above exchange is a typographical error in the reporter's transcript or a slip of the tongue by the prosecutor.  While presenting legal argument at the conclusion of the suppression hearing, the prosecutor also asserted that, at some point after entering the residence, officers learned Turner had permission to live there.  This statement appears to arise from testimony by one officer that was contradicted by body camera footage and another officer's testimony.

if Turner did not expect the district court to address her standing when denying her suppression motion, she did not respond by bringing the purported concession to the district court's attention. Thus, the district court was deprived of the opportunity to consider the issue and rule accordingly.

Moreover, this is not a case in which the State acquiesced in an adverse trial court decision on a defendant's standing, which could result in waiver of the issue on appeal. *See State v. Wolfe*, 165 Idaho 338, 342, 445 P.3d 147, 151 (2019). Rather, Turner acquiesced and now seeks to raise a new issue on appeal to challenge the adverse standing determination by the district court. Defendants cannot slumber on a defense, take no exception to an adverse ruling, and then attempt to present the defense for the first time on appeal. *Garcia-Rodriguez*, 162 Idaho at 276, 396 P.3d at 705. Consequently, we will not consider Turner's concession arguments further.

### 2. Squatter's standing

Turner also argues that, even if she did not have permission to live in the residence, the district court erred by concluding she lacked standing. More specifically, Turner contends that her legitimate authority to enter the residence and her unilateral decision to use it to protect her possessions while she slept[3] supports a reasonable expectation of privacy. We hold that Turner failed to preserve this argument and that, even if she had, it fails on the merits.

The warrantless search of a residence generally violates the Fourth Amendment. *State v. Johnson*, 110 Idaho 516, 523, 716 P.2d 1288, 1295 (1986). Even if a search is improper, however, only individuals whose Fourth Amendment rights were violated by the search may obtain suppression of evidence. *State v. Hanson*, 142 Idaho 711, 716, 132 P.3d 468, 473 (Ct. App. 2006). Thus, when challenging a search, the defendant must make a threshold showing that a government investigation physically intruded upon a constitutionally protected area or

---

[3] Turner also asserts that it is unclear whether the district court found that she was or was not living in the residence at the time of the search. To the extent the district court found that she was not living in the residence, Turner argues the district court erred. Because, as set forth below, Turner's challenge to the district court's conclusion that she lacked standing fails even if she was actually living in the residence, it is unnecessary to resolve the issue.

otherwise invaded a legitimate expectation of privacy in the place or thing searched. *See Florida v. Jardines*, 569 U.S. 1, 5 (2013); *Hanson*, 142 Idaho at 717, 132 P.3d at 474.

Neither Turner's written motion to suppress nor her oral arguments before the district court expressly identify the source of the privacy interest she claimed in the residence. The evidence Turner presented during the suppression hearing implies she claimed a privacy interest because she was an overnight guest in the residence. Specifically, Turner testified at the beginning of the suppression hearing that she had been living in the residence with the owner's permission for about two weeks prior to the night of the alleged search, had no lease agreement with the owner, had not paid for any utilities, and did not consent to the officers' entry. However, even when a defendant mentions the general basis for a motion to suppress, his or her arguments on appeal are limited by what was argued to the trial court. *State v. Armstrong*, 158 Idaho 364, 368, 347 P.3d 1025, 1029 (Ct. App. 2015). Turner's testimony does not imply her novel argument on appeal that she leveraged a limited grant of authority to enter and check on the residence to create a reasonable expectation of privacy in the residence by unilaterally deciding to sleep there. The district court's order denying Turner's motion to suppress, which concludes that Turner lacked a reasonable expectation of privacy in the residence without discussing the argument she now presents, supports this conclusion. Thus, because Turner did not argue before the district court that she had a reasonable expectation of privacy in the residence, regardless of the scope of her legitimate authority over the residence, she waived the issue. *See Garcia-Rodriguez*, 162 Idaho at 275, 396 P.3d at 704. However, as set forth below, Turner's argument would fail even if it were preserved for appeal.

As previously stated, the officers' search of the residence must have physically intruded upon a constitutionally protected area or violated a reasonable expectation of privacy for Turner to have standing. *See Jardines*, 569 U.S. at 5; *Hanson*, 142 Idaho at 717, 132 P.3d at 474. Turner does not assert that she held a property interest in the residence and, therefore, she could not have suffered a governmental intrusion on a constitutionally protected area. *See Jardines*, 569 U.S. at 5 (observing that a physical intrusion by the government upon an individual's person, homes, papers, or effects constitutes a search within the original meaning of the Fourth Amendment). Instead, Turner asserts that officers intruded upon her reasonable expectation of privacy in the residence by searching it. To have a reasonable expectation of privacy in a place

or thing, an individual must hold a subjective expectation of privacy in the place or thing that society is willing to recognize as reasonable. *State v. Pruss*, 145 Idaho 623, 626, 181 P.3d 1231, 1234 (2008). Individuals may hold a reasonable expectation of privacy in a residence that they do not own. *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990). For example, overnight guests have a reasonable expectation of privacy in their host's home. *Id.* On the other hand, although a squatter may hold a subjective expectation of privacy in the structure in which he or she squats, such an expectation is not objectively reasonable. *See United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998) (holding that a defendant did not have a reasonable expectation of privacy in a vacant home after staying in it for a week); *United States v. Dodds*, 946 F.2d 726, 728 (10th Cir. 1991) (observing that a defendant lacked a reasonable expectation in a vacant apartment in which he previously slept).

An individual who has authority only to enter a residence but unilaterally decides to stay there overnight bears a greater resemblance to a squatter than an overnight guest. Notably, neither an individual who could enter a residence only to check on it nor a squatter has authority to *occupy* or *use* the residence like an overnight guest. The primary difference between a person who can enter a residence and a squatter is that the former could legitimately be present in residence. However, legitimate presence on a premises cannot, by itself, support a reasonable expectation of privacy. *See Rakas v. Illinois*, 439 U.S. 128, 141-43 (1978). In sum, Turner may have developed a subjective expectation of privacy in the residence by staying there overnight. Absent permission from the owner to do so, however, that expectation is not one society would recognize as reasonable. Consequently, Turner has failed to show the district court erred in concluding she lacked standing.

## B.     Fruit of the Poisonous Tree

Even if Turner had standing to challenge the search of the residence, she could not prevail on appeal without showing that the district court erred in concluding that officers lawfully obtained her disclosure of and statements about the controlled substances found in the bedroom. As set forth below, Turner has failed to do so.

The exclusionary rule prohibits the use of evidence obtained through unconstitutional government activity. *State v. McBaine*, 144 Idaho 130, 133, 157 P.3d 1101, 1104 (Ct. App. 2007). This prohibition applies not only to evidence directly obtained through unconstitutional

7

activity, but also evidence derived from unconstitutionally obtained evidence. *Id.* For evidence to be suppressible, unlawful government activity must be the "but-for" cause of the challenged evidence's discovery. *Id.* Defendants seeking suppression must make a threshold showing of a factual nexus between the government's unconstitutional conduct and the challenged evidence. *State v. Wigginton*, 142 Idaho 180, 184, 125 P.3d 536, 540 (Ct. App. 2005). The requisite factual nexus exists if the challenged evidence is the product or result of the allegedly unconstitutional government conduct. *McBaine*, 144 Idaho at 134, 157 P.3d at 1105.

The district court concluded that officers lawfully obtained the controlled substances found in the bedroom. The district court supported this conclusion with findings related to the owner's prospective consent to officers entering the residence and the voluntariness of both Turner's consent to an officer reentering the bedroom and Turner's subsequent disclosure of the drugs therein. Despite Turner raising the issue, the district court did not, however, determine whether the search of the bathroom prior to Turner's disclosure was lawful. Turner faults the district court for failing to conclude that officers unlawfully searched the bathroom and that she made a threshold showing that the search was a but-for cause of her later disclosure of the controlled substances in the bedroom. Consequently, according to Turner, her statements and the controlled substances she disclosed in the bedroom were tainted by the earlier unlawful search. We disagree.

After officers encountered Turner and the two individuals found in the bathroom, the three suspects were handcuffed, brought into the living room, and read their *Miranda* rights. While one officer attempted to contact the owner of the residence, a second officer returned to the bathroom and discovered controlled substances in the toilet after lifting the lid. The second officer then confronted the two individuals found in the bathroom with the controlled substances discovered in the toilet, asserting that both individuals would be charged with a crime if neither admitted ownership of the drugs. After neither suspect admitted ownership, the officer asked Turner, "You're not going to have any narcotics in [the bedroom] are you?" Turner twice shook her head "No" in response. The officer then asked all three suspects, "Is there gonna be any other narcotics here in the house besides what's in the toilet?" Neither Turner nor the other two suspects responded by disclosing the presence of any controlled substances in the residence. Turner asserts that the officer phrased his questions in the future tense in a deliberate ploy to

obtain a confession by implying that the bedroom *would* be searched and that any controlled substances there would inevitably be discovered. According to Turner, the psychological effect of observing the officer confront the two other suspects with the results of the allegedly unlawful search of the bathroom and the officer's implied threat to search the bedroom tainted Turner's subsequent disclosure of the drugs in the bedroom.

Regardless of the lawfulness of the search of the bathroom, Turner's argument that the bathroom search and implied threats to search the rest of the residence induced her disclosure of the drugs in the bedroom lacks support from evidence in the record. Officers did not threaten to charge Turner with a crime for the controlled substances found in the bathroom. To the contrary, officers never questioned Turner in connection with those substances at all. Additionally, body camera footage taken by officers shows that, while handcuffed in the living room, Turner resisted the purported ploy to elicit a confession. The body camera footage and testimony from officers further shows that it was only after officers confirmed Turner's permission to be in the house and removed her handcuffs that she reinitiated contact with an officer--apparently hoping to become a confidential informant. The video then shows Turner leading the officer into the bedroom and the officer asking whether Turner had "anything" in the room. Turner admitted there were syringes she had used to inject methamphetamine in the room, removed a bag from a nearby drawer, and displayed the bag's contents to the officer--including a syringe loaded with methamphetamine. Moreover, despite taking the stand to testify about renting the residence to support a claim of Fourth Amendment standing, Turner did not testify that she felt coerced into revealing the contents of the bag to the officer. To the contrary, the evidence shows that Turner resisted disclosing the presence of the drugs in the bedroom when she was faced with more coercive circumstances while handcuffed in the living room. This belies any contention that the allegedly unlawful search of the bathroom and the purported threats to search the residence were a but-for cause of her subsequent disclosure of the drugs.

In sum, no evidence in the record supports Turner's argument that her statements and disclosure of the drugs in the bedroom were caused by the search of the bathroom. Thus, regardless of the lawfulness of the search, Turner has not shown that the district court erred by failing to conclude that the controlled substances found in the bedroom and her statements about that evidence were fruits of that allegedly unlawful search.

C.     **Voluntariness**

In the alternative, Turner argues that the district court erred by finding that she voluntarily disclosed the controlled substances in the bedroom. Turner contends that remand is necessary for the district court to conduct a proper evaluation of the voluntariness of her disclosure in light of the allegedly unlawful search of the bathroom. Turner's argument is unpersuasive.

A confession, like Turner's disclosure of the drugs in the bedroom, must be voluntary to be admissible. *See State v. Samuel*, 165 Idaho 746, 762, 452 P.3d 768, 784 (2019). Trial courts must consider the totality of the circumstances when evaluating the voluntariness of a confession. *Id.* The ultimate question is whether the individual's will was overborne such that the confession resulted from coercive police conduct. *Id.* at 762-63, 452 P.3d at 784-85. As with other forms of evidence, a confession may also be tainted by prior unlawful police conduct. *See State v. Smith*, 119 Idaho 96, 100, 803 P.2d 1002, 1006 (Ct. App. 1990).

Although presented as an independent issue, Turner's voluntariness challenge is intertwined with her argument that the allegedly unlawful search of the bathroom tainted her disclosure of the controlled substances in the bedroom. Turner argues the district court engaged in a deficient voluntariness analysis by focusing on her words and actions at the time she disclosed the controlled substances in the bedroom, without considering the effect of the allegedly unlawful search of the bathroom on the voluntariness of her actions. Stated differently, Turner argues that the district court failed to consider whether the allegedly unlawful search of the bathroom *caused* her disclosure of the controlled substances in the bedroom. As set forth above, there is an absence of evidence in the record indicating that the allegedly unlawful search caused or affected Turner's decision to disclose the controlled substances in the bedroom. Consequently, even though the district court did not expressly address Turner's argument that the search of the bathroom was unlawful, remand for consideration of the allegedly unlawful search's effect on Turner would be futile. Accordingly, Turner has failed to show that the district court erred in finding that she voluntarily disclosed the controlled substances in the bedroom.

**IV.**

**CONCLUSION**

10

Turner failed to show error in the district court's conclusion that she lacked standing to challenge the search of the residence. Additionally, Turner's argument that her disclosure of the controlled substances was the fruit of an unconstitutional search or that the search affected the voluntariness of her disclosure of the controlled substances in the bedroom lacks support in the record. Consequently, Turner has failed to show error in the denial of her motion to suppress. Accordingly, Turner's judgment of conviction for possession of a controlled substance is affirmed.

Judge GRATTON and Judge BRAILSFORD, **CONCUR**.